**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON WARREN,** | ) | |
| | ) | |
| and | ) | |
| | ) | Case No. |
| **KATHY TRACY,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **CITY OF NORMANDY,** | ) | |
| *Serve Manager:* | ) | |
| 7700 Natural Bridge Rd | ) | |
| St. Louis, MO 63121 | ) | |
| | ) | |
| Defendant. | ) | REQUEST FOR JURY TRIAL |

<u>**COMPLAINT FOR DAMAGES**</u>

COMES NOW, Plaintiffs Sharon Warren and Kathy Tracy (collectively "Plaintiffs"), by and through their attorneys, and bring this Complaint for Damages against Defendant City of Normandy ("Defendant"), and allege and state as follows:

<u>**Parties and Jurisdiction**</u>

1. Plaintiff Sharon Warren ("Plaintiff Warren") is a white citizen of the United States, residing in Wildwood, St. Louis County, Missouri.

2. Plaintiff Kathy Tracy ("Plaintiff Tracy") is a white citizen of the United States, residing in St. Louis, St. Louis County, Missouri.

3. Defendant is and was at all relevant times a duly organized governmental entity operating under the laws of Missouri, with its principal place of business in Normandy, St. Louis County, Missouri.

4. Defendant conducts substantial and continuous business and has substantial and numerous contacts with the State of Missouri and St. Louis County.

5. This is an employment case based upon and arising under 42 U.S.C. § 1983 ("§1983") for violation of the civil rights guaranteed by 42 U.S.C. § 1981 ("§1981"), and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.* ("MHRA").

6. Plaintiffs are employees within the meaning of §1983 and §1981, and the MHRA.

7. Defendant is an "employer" within the meaning of §1983 and §1981, and the MHRA, Mo. Rev. Stat. § 213.010(8).

8. Plaintiffs seek relief in this case arising from the same transaction, occurrence, or the same series of transactions or occurrences in their employment with Defendant, and common questions of law or fact will arise in this case between the Plaintiffs' claims against Defendant.

9. At all relevant times, Defendant has maintained and operated a place of business at 7700 Natural Bridge Road, St. Louis, St. Louis County, Missouri 63121.

10. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri Eastern Division.

11. Jurisdiction and venue are proper in the Eastern District of Missouri Eastern Division pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 28 U.S.C. §1391(b).

## Administrative Procedures

12. On or about March 1, 2021, Plaintiff Warren timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging race and age discrimination and retaliation (attached as Exhibit 1 and incorporated herein by reference).

13. On or about October 25, 2021, the MCHR issued to Plaintiff Warren a Notice of Right to Sue (attached as Exhibit 2 and incorporated herein by reference) and this lawsuit was filed within ninety (90) days of the issuance of the Notice of Right to Sue.

14. On or about March 8, 2021, Plaintiff Tracy timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging race and age discrimination and retaliation (attached as Exhibit 3 and incorporated herein by reference).

15. On or about March 31, 2021, Plaintiff Tracy timely filed with the MCHR and EEOC a First Amended Charge of Discrimination alleging race and age discrimination and retaliation (attached as Exhibit 4 and incorporated herein by reference).

16. On or about April 23, 2021, Plaintiff Tracy timely filed with the MCHR and EEOC a Second Amended Charge of Discrimination alleging race and age discrimination and retaliation (attached as Exhibit 5 and incorporated herein by reference).

17. On or about October 25, 2021, the MCHR issued to Plaintiff Tracy a Notice of Right to Sue (attached as Exhibits 6-8 and incorporated herein by reference) and this lawsuit was filed within ninety (90) days of the issuance of the Notice of Right to Sue.

18. The aforesaid Charges of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of a MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charges of Discrimination.

19. Plaintiffs have satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

## **General Allegations Common to All Counts**

20. Plaintiff Warren (white) began working for Defendant in approximately August 2012 as Defendant's City Clerk.

21. Plaintiff Tracy (white) began working for Defendant in approximately 2013 as Defendant's Housing Clerk and Police Clerk.

22. In approximately January 2020, Normandy Mayor Patrick Greene ("Mayor Greene") (black) resigned, and Maurice Hunt (black) was appointed by Normandy's City Council ("City Council") as Mayor Pro Tem ("Mayor Hunt").

23. All members of Normandy's City Council at the time were black.

24. As Mayor Pro Tem, Mayor Hunt was responsible for overseeing all of Defendant's employees, including, among others, the city clerk, the housing and police clerk, cleaning, and city hall employees.

25. Shortly after Mayor Hunt was appointed, he began to terminate the employment of Defendant's white employees.

26. In approximately March 2020, Mayor Hunt terminated two (2) public works employees, Kevin Gibson ("Public Works Gibson") (white) and Jeff Misbauer ("Public Works Misbauer") (white) on the same day.

27. Notably, Public Works Gibson and Public Works Misbauer were the only two (2) white employees in the public works department.

28. After Public Works Gibson was terminated, Mayor Hunt assigned his job responsibilities to Director of Public Works Regina Fitzgerald ("Director Fitzgerald") (black).

29. Shortly after Public Works Gibson and Public Works Misbauer were terminated, in approximately April 2020, Mayor Hunt stated in City Council meetings that he was "so proud that the whole crew in public works is African American."

30. Mayor Hunt also told Plaintiffs that he was proud that the whole crew in public works was African-American.

31. Likewise, shortly after Public Works Gibson and Public Works Misbauer were terminated, Mayor Hunt stated to black employees, "we got those white motherfuckers out of here."

32. Since Public Works Gibson and Public Works Misbauer were terminated, Mayor Hunt has only hired black employees for public works positions.

33. Mayor Hunt has frequently made racially offensive comments to Defendant's employees, such as: "We need to get all these white people out of here"; "Don't hire white people"; "I'm sick of all these white motherfuckers"; "We're going to get rid of all these white motherfuckers and it'll be an all-black ran city like it should be"; "Don't bring any white people around me"; and that he does not trust any of Defendant's white employees.

34. On one occasion, Mayor Hunt told Public Works Misbauer, "You don't need this job, your people can go out and get any kind of job. You can pretty much do anything that you want, I'm surprised you come in here every day."

35. At some point after he was appointed as Mayor Pro Tem, Mayor Hunt also distributed copies of "The Willy Lynch Letter and the Making of a Slave" to Defendant's black employees.

36. Throughout Mayor Hunt's tenure as mayor, Mayor Hunt treated white employees differently than black employees, and continuously displayed hostility towards white employees based on their race.

37. For example, Mayor Hunt has often refused to speak with white employees, and would only speak with black employees.

38. On one occasion, Plaintiff Tracy notified Mayor Hunt that Co-worker Jana Hodges ("Co-worker Hodges") (white) needed to leave early due to a family emergency, and asked if he would like Plaintiff Tracy to stay until 5:00PM, so that City Hall would not need to close early.

39. Approximately thirty (30) minutes later, as Plaintiff Tracy had not received a response, she sent Mayor Hunt another e-mail asking if he would like her to stay until 5:00PM.

40. Mayor Hunt still did not respond to this e-mail, so Plaintiff Tracy sent him a text message.

41. When Mayor Hunt did not respond to Plaintiff Tracy's text message, she asked Assistant Cheryl Wallace ("Assistant Wallace") (black) to call Mayor Hunt and ask him if he wanted Plaintiff Tracy to stay until 5:00PM.

42. In contrast to Plaintiff Tracy's unsuccessful attempts to reach Mayor Hunt that day, when Assistant Wallace called Mayor Hunt, he answered her immediately.

43. In approximately June or July 2020, Mayor Hunt told Director Fitzgerald that her son could come work beneath her in public works.

44. When Director Fitzgerald spoke with Plaintiff Warren about this, Plaintiff Warren informed her that Defendant's anti-nepotism policies do not allow her son to work beneath her.

45. Mayor Hunt then called Plaintiff Warren, yelled at her, told her to "pack up her stuff," and said that he would be in later to talk about whether she had a job or not.

46. When Mayor Hunt came to the office later that day, he acted as if nothing had happened, so Plaintiff Warren asked him if she still had a job.

47. Mayor Hunt responded that he just needed to take a minute and cool down.

48. Mayor Hunt then said, "I could call you a cunt and you would just have to be okay with it, and I would walk away, and everything would go back to normal."

49. Around the same time, Mayor Hunt told a group of employees, "The guys that work for me, in the organization that works for me, every white motherfucker spits in my motherfucking coffee, I know they spit in my coffee. You know what I do, I leave it out for them to spit in, then I throw that out and pour me another cup, because I expect that, because they hate my guts and I love that, because they don't do they job."

50. Mayor Hunt later made the same comment regarding white employees spitting in his coffee to Plaintiff Tracy in approximately October 2020.

51. On countless occasions, Mayor Hunt made derogatory statements regarding white employees to Public Works Employee Kevin Hodges ("Public Works Hodges") (black), to convey his strong dislike towards white people.

52. Public Works Hodges took great offense to these racist statements because he is married to a white woman and has biracial children.

53. When Public Works Hodges made a complaint of race discrimination and stated he did not like Mayor Hunt's racist comments, Mayor Hunt attempted to make Public Works Hodges feel like he should not be upset because of his own race (black).

54. Shortly after Public Works Hodges made his race complaint, Mayor Hunt terminated him, on or about August 10, 2020.

55. On or about August 14, 2020, Mayor Hunt stated in a public works meeting that he did not want any "whites" or any race other than black working for Defendant, so he wanted to fire everyone and pick and choose who he wanted.

56. Around that same time, in approximately August 2020, Plaintiff Warren was in a meeting with Mayor Hunt, Police Chief Frank Mininni ("Chief Mininni") (white), City Attorney Steven Garrett ("Attorney Garrett") (white), and Director Fitzgerald (black).

57. During this meeting, Mayor Hunt pointed at Plaintiff Warren, Chief Mininni, and Attorney Garrett, and stated, "I don't know how long your jobs are going to last."

58. Mayor Hunt then turned to Director Fitzgerald and said, "You'll be fine."

59. Between October and November 2020, Mayor Hunt stated frequently that employees were "only allowed to hire blacks or Mexicans."

60. In approximately October 2020, Mayor Hunt forced Chief Mininni to resign.

61. Also in approximately October 2020, Plaintiff Warren was given the responsibility of hiring an assistant for Mayor Hunt.

62. When Mayor Hunt discussed hiring an assistant with Plaintiff Warren, Mayor Hunt instructed her to "only hire black people," and specifically told her she was not allowed to hire anyone who was white.

63. In approximately December 2020, Plaintiff Warren disciplined a black employee that she supervised, Assistant Wallace, for failing to perform her job duties.

64. Subsequently, Mayor Hunt told Plaintiff Warren that she was not allowed to supervise black employees because black women are different than white women and she did not know how to supervise black women.

65. On several occasions throughout Plaintiff Warren's employment, Plaintiff Warren reported Mayor Hunt's racist comments to Attorney Garrett.

66. On or about January 12, 2021, Attorney Garrett requested that Plaintiff Warren come to his office immediately, where he told her that she needed to watch her back.

67. Plaintiff Warren reminded Attorney Garrett about Mayor Hunt's racist comments, and that she had reported these racist comments to him previously.

68. Approximately two (2) days later, on or about January 14, 2021, Attorney Garrett called Plaintiff Warren and told her not to come into work that day because she was being terminated.

69. When Plaintiff Warren asked why she was being terminated, Attorney Garrett said that he did not know.

70. The following day, on or about January 15, 2021, Mayor Hunt announced in a meeting that Plaintiff Warren was no longer employed by Defendant, and then stated that he was "made aware that a lot of people think there's some racism going on and this is the time to speak your mind."

71. When Mayor Hunt left the room, City Councilman Rick Nelson ("Councilman Nelson") (black) and City Councilwoman Yolanda Smith ("Councilwoman Smith") (black) stated that they wanted to discuss the racial rumors that were going around.

72. Councilman Nelson and Councilwoman Smith then stated that they could feel the racial tension between everyone when they were in the building, and if they had to come back again to resolve the tension between everyone, they might have to let some people go.

73. Councilwoman Smith further stated, "I find it really hard to believe there's any racism going on because if [Mayor Hunt] really said that we could only hire blacks and Mexicans, that would be a lawsuit."

74. During this meeting, several white employees shared they had heard Mayor Hunt say Defendant could only hire blacks and Mexicans and they thought it was unfair and ridiculous.

75. Assistant Wallace then stated that she did not trust Plaintiff Tracy because she is best friends with Plaintiff Warren and "best friends share everything."

76. Councilwoman Smith then stared at Plaintiff Tracy and said, "City employees shouldn't be sharing city business with other people."

77. Mayor Hunt then pulled Plaintiff Tracy out of the meeting.

78. After the meeting concluded, Councilwoman Smith and Councilman Nelson went into Mayor Hunt's office and closed the door.

79. On or about January 26, 2021, Mayor Hunt sent an e-mail to Defendant's employees stating that Plaintiff Warren had hired an attorney, and they were not allowed to speak with her by phone or e-mail, with no exceptions, effective immediately.

80. Later that same day, City Council confirmed that Plaintiff Warren was terminated.

81. Upon information and belief, Plaintiff Warren's job responsibilities were primarily reassigned to a black employee, Assistant Wallace.

82. On or about February 15, 2021, Plaintiff Tracy complained to Mayor Hunt that she had worked for Defendant for approximately eight (8) years and there were never any race issues before he was appointed.

83. On or about February 19, 2021, Mayor Hunt stated he wanted Assistant Wallace to start learning how to do payroll so that Co-worker Hodges had a back-up.

84. Notably, Plaintiff Tracy was Co-worker Hodges' back-up.

85. Mayor Hunt also told Assistant Wallace and Court Clerk DePresha Adams ("Clerk Adams") (black) that Plaintiff Tracy had too much on her plate.

86. Notably, Plaintiff Tracy never had a conversation with Mayor Hunt or anyone else about having too much on her plate.

87. Later that same day, Former Court Clerk Mikaela Ligon ("Former Clerk Ligon") (white) came by Defendant to say hi, as she frequently does when she is in town to visit.

88. Shortly after Former Clerk Ligon arrived, Mayor Hunt sent the police to escort her out, stating that she left on bad terms.

89. However, Mayor Hunt's statement about Former Clerk Ligon was untrue, as she had resigned from her position with Defendant because she was moving out of town.

90. On or about February 22, 2021, in a meeting with Mayor Hunt and Co-worker Hodges, Mayor Hunt yelled at Plaintiff Tracy and told her she was not trustworthy.

91. When Plaintiff Tracy asked Mayor Hunt what he meant by that, he stated, "I just don't trust you."

92. Mayor Hunt then said that a few days ago, he had Plaintiff Tracy's personnel file out with Defendant's accountant, and they were looking at it together.

93. Plaintiff Tracy believed this statement from Mayor Hunt implied that he was considering whether to terminate her employment, and when she tried to get up to grab a tissue, Mayor Hunt said, "If you leave this room you're not going to like the results. I'm your supervisor and the mayor."

94. Mayor Hunt then told Plaintiff Tracy to go home for the day, and said, "Don't you stop and talk to anybody on the way out, and you need to think about your employment here at [Defendant]."

95. In approximately 2016 or 2017, Defendant hired Plaintiff Tracy as Cleaning for City Hall, in addition to her position as Housing Clerk and Police Clerk,

96. Every day from approximately 6:00AM to approximately 8:00AM, Plaintiff Tracy cleaned City Hall for an extra $2 per hour, prior to starting her Housing Clerk and Police Clerk duties for the day.

97. On or about February 25, 2021, Mayor Hunt informed Plaintiff Tracy that Defendant no longer needed her services cleaning City Hall because they were going in a different direction.

98. Further, Mayor Hunt stated that Plaintiff Tracy's pay would be decreased, and her hours would be shortened.

99. Notably, Mayor Hunt replaced Plaintiff Tracy with a black male employee.

100. Plaintiff Tracy filed her initial charge of discrimination against Defendant on or about March 8, 2021, alleging race discrimination, age discrimination, and retaliation.

101. On or about March 25, 2021, Mayor Hunt wrote up Plaintiff Tracy for alleged failure to get approval to work overtime.

102. Later that same day, Director Fitzgerald wrote up Plaintiff Tracy for alleged incompetence, insubordination, failure or refusal to carry out instructions, willful disregard of others, and disregard or violation of departmental rules and regulations.

103. On or about March 31, 2021, Plaintiff Tracy filed her first amended charge of discrimination against Defendant alleging race discrimination, age discrimination, and retaliation.

104. On or about April 8, 2021, approximately one (1) month after Plaintiff Tracy filed her initial charge of discrimination against Defendant, and one (1) week after Plaintiff Tracy filed her amended charge of discrimination against Defendant, Defendant placed Plaintiff Tracy on administrative leave.

105. Notably, Defendant did not inform Plaintiff Tracy why she was placed on administrative leave.

106. On or about April 16, 2021, Defendant terminated Plaintiff Tracy.

### COUNT I
**Violation of 42 U.S.C. §1983 for Violation of
Plaintiffs' Rights Arising Under 42 U.S.C. §1981
Race Discrimination
(All Plaintiffs against Defendant)**

107. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

108. Plaintiffs are white, and thereby members of a protected class.

109. During Plaintiffs' employment, Defendant, by and through its authorized decision makers, agents, and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiffs, and those similarly situated, based on their race.

110. Plaintiffs were terminated by Defendant because of their race.

111. But for Plaintiff Warren's race, Defendant would not have terminated her.

112. But for Plaintiff Tracy's race, Defendant would not have demoted her, subjected her to formal discipline, and terminated her.

113. At all times mentioned herein, before and after, the above-described perpetrators were decisionmakers that possessed final authority to establish municipal policy with respect to the action ordered of Defendant's employees, including the city clerk, housing and police clerk, cleaning, and city hall employees, thereby making Defendant liable for their conduct in violation of §1983 and §1981.

114. At all times mentioned herein, before and after, the above-described perpetrators were acting pursuant to a municipal custom or policy of discriminating against white employees.

115. Defendant's municipal custom or policy of discriminating against white employees was the moving force behind the illegal discrimination Plaintiffs suffered.

116. The above-described perpetrators had authority to promulgate Defendant's custom or policy of discriminating against white employees.

117. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

118. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1983 and §1981.

119. As shown by the foregoing, Plaintiffs suffered intentional discrimination at the hands of Defendant, based on their race, in violation of §1983 and §1981.

120. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived of income, as well as other monetary and non-monetary benefits.

121. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

122. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiffs.

123. Plaintiffs are entitled to recover from Defendant reasonable attorneys' fees as provided in 42 U.S.C. § 1988.

124. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violation of 42 U.S.C. §1983 for Violation of**
**Plaintiffs' Rights Arising Under 42 U.S.C. §1981**
**Race Discrimination – Hostile Work Environment**
**(All Plaintiffs against Defendant)**

125. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

126. Plaintiffs are white, and thereby members of a protected class.

127. During Plaintiffs' employment, Defendant, by and through its authorized decision makers, agents, and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiffs, and those similarly situated, based on race.

128. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiffs' work performance, thereby creating an intimidating, hostile, and offensive working environment.

129. Defendant subjected Plaintiffs to severe and pervasive race discrimination, including making derogatory comments regarding their race and treating them less favorably than black employees.

130. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment, and thereby detrimentally affected Plaintiffs.

131. The conduct described herein would have offended a reasonable person of the same race in Plaintiffs' positions.

132. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

133. Plaintiffs were subjected to a hostile work environment by Defendant because of their race.

134. At all times mentioned herein, before and after, the above-described perpetrators were decisionmakers that possessed final authority to establish municipal policy with respect to the action ordered of Defendant's employees, including the city clerk, the housing and police clerk, cleaning, and city hall employees, thereby making Defendant liable for their conduct in violation of §1983 and §1981.

135. At all times mentioned herein, before and after, the above-described perpetrators were acting pursuant to a municipal custom or policy of discriminating against white employees.

136. The above-described perpetrators had authority to promulgate Defendant's custom or policy of discriminating against white employees.

137. Defendant's municipal custom or policy of discriminating against white employees was the moving force behind the illegal discrimination Plaintiffs suffered.

138. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

139. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1983 and §1981.

140. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived income, as well as other monetary and non-monetary benefits.

141. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

142. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiffs.

143. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

144. Plaintiffs are entitled to recover from Defendant reasonable attorneys' fees as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive

relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation of 42 U.S.C. §1983 for Violation of**
**Plaintiffs' Rights Arising Under 42 U.S.C. §1981**
**Retaliation**
**(All Plaintiffs against Defendant)**

145. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

146. Plaintiffs engaged in protected activities under §1981 by making reports of what they believed in good faith to be race discrimination and/or racial harassment to Defendant.

147. Additionally, Plaintiff Tracy engaged in a protected activity by filing a Charge of Discrimination in which she alleged she experienced discriminatory treatment on the basis of her race and age, and retaliation for complaints she had made regarding Mayor Hunt's racist comments.

148. Plaintiff Warren suffered adverse employment actions as a result of her good faith reports, including, but not limited to, termination.

149. Plaintiff Tracy suffered adverse employment actions as a result of her good faith reports, including, but not limited to, demotion, write-ups, and termination.

150. Defendant's desire to retaliate against Plaintiffs for their complaints of race discrimination and/or racial harassment were the but-for cause of Defendant's decision to terminate them.

151. During Plaintiffs' employment, Defendant, by and through its authorized decision makers, agents, and employees, engaged in a pattern and practice of intentional retaliation

against Plaintiffs, and those similarly situated, because of their reports of race discrimination.

152. At all times mentioned herein, before and after, the above-described perpetrators were decisionmakers that possessed final authority to establish municipal policy with respect to the action ordered of Defendant's employees, including the city clerk, the housing and police clerk, cleaning, and city hall employees, thereby making Defendant liable for their conduct in violation of §1983 and §1981.

153. At all times mentioned herein, before and after, the above-described perpetrators were acting pursuant to a municipal custom or policy of retaliating against employees that report race discrimination.

154. Defendant's municipal custom or policy of discriminating against employees that report race discrimination was the moving force behind the illegal discrimination Plaintiffs suffered.

155. The above-described perpetrators had authority to promulgate Defendant's custom or policy of retaliating against employees that report race discrimination.

156. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

157. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1983 and §1981.

158. As shown by the foregoing, Plaintiffs suffered intentional retaliation at the hands of Defendant, because of their reports of race discrimination, in violation of §1983 and §1981.

159. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived of income, as well as other monetary and non-monetary benefits.

160. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

161. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized retaliation against Plaintiffs.

162. Plaintiffs are entitled to recover from Defendant reasonable attorneys' fees as provided in 42 U.S.C. § 1988.

163. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiffs request the Court enter judgment in their favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Violation of Mo. Rev. Stat. § 213.010 et seq. (MHRA)**
**Race Discrimination**
**(All Plaintiffs against Defendant)**

164. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs

165. Plaintiffs are members of a protected class under the MHRA because they are white.

166. During her employment with Defendant, Plaintiff Warren suffered several adverse actions including, but not limited to, termination.

167. During her employment with Defendant, Plaintiff Tracy suffered several adverse actions including, but not limited to, demotion, write-ups, and termination.

168. Defendant treated Plaintiffs less favorably than others because of their race.

169. Plaintiffs' race were at least a motivating factor in the adverse employment actions taken against them.

170. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior.*

171. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

172. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

173. Plaintiffs suffered intentional discrimination at the hands of Defendant, based on their race, in violation of the MHRA.

174. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived of income, as well as other monetary and non-monetary benefits.

175. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

176. By failing to take prompt and effective remedial action and instead of re-employing Plaintiffs, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiffs.

177. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

178. Pursuant to the provisions of the MHRA, Plaintiffs are entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiffs request that the Court enter judgement in their favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation of Mo. Rev. Stat. §§ 213.010 et seq. (MHRA)
### Race Discrimination – Hostile Work Environment
### (All Plaintiffs against Defendant)

179. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

180. Plaintiffs are members of a protected class because they are white.

181. During Plaintiffs' employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiffs based on their race.

182. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior.*

183. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiffs' work performance, thereby creating an intimidating, hostile, and offensive working environment.

184. Defendant subjected Plaintiffs to severe and pervasive race discrimination, including making derogatory comments regarding their race and treating Plaintiffs less favorably than black employees.

185. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiffs.

186. The conduct described herein would have offended a reasonable person of the same race in Plaintiffs' positions.

187. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

188. By failing to conduct a prompt investigation of Plaintiffs' allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiffs were subjected.

189. Plaintiffs' status as white were at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiffs.

190. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

191. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

192. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived of income, as well as other monetary and non-monetary benefits.

193. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

194. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiffs.

195. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

196. Pursuant to the provisions of the MHRA, Plaintiffs are entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgement in their favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VI**
**Violation of Mo. Rev. Stat. §§ 213.010 et seq. (MHRA)**
**Retaliation**
**(All Plaintiffs against Defendant)**

197. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

198. Plaintiffs engaged in protected activities under the MHRA by reporting what they believed in good faith to be race discrimination and/or racial harassment to Defendant.

199. Additionally, Plaintiff Tracy engaged in a protected activity by filing a Charge of Discrimination in which she alleged she experienced discriminatory treatment on the basis of her race and age, and retaliation for complaints she had made regarding Mayor Hunt's racist comments.

200. Plaintiff Warren suffered adverse employment actions as a result of her good faith reports, including, but not limited to, termination.

201. Plaintiff Tracy suffered adverse employment actions as a result of her good faith reports, including, but not limited to, demotion, write-ups, and termination.

202. A causal connection existed between Plaintiffs' good faith reports of race discrimination and Defendant's decision to terminate Plaintiffs' employment.

203. Plaintiffs' good faith reports of race discrimination were at least a motivating factor in Defendant's decision to terminate Plaintiffs.

204. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

205. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

206. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

207. As shown by the foregoing, Plaintiffs suffered intentional retaliation at the hands of Defendant, based on engaging in protected activities, in violation of the MHRA.

208. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have been deprived of income, as well as other monetary and non-monetary benefits.

209. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiffs have suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

210. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination and retaliation against Plaintiffs.

211. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiffs, thus justifying an award of punitive damages in an amount sufficient

to punish Defendant or to deter Defendant and other employers from like conduct in the future.

212. Plaintiffs are entitled to recover from Defendant reasonable attorneys' fees as provided in the MHRA.

WHEREFORE, Plaintiffs request that the Court enter judgement in their favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Plaintiffs request a trial by jury, in St. Louis, Missouri, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By:    */s/* Lauren H. Bridge
Lauren H. Bridge    MO 72724
l.bridge@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone    (816) 581-4040
Facsimile    (816) 741-8889
**ATTORNEYS FOR PLAINTIFFS**